[No. 25925. *En Banc.* August 8, 1936.]

NELLIE MACIEJCZAK, *as Administratrix, Respondent*, v.
JEFF BARTELL, *as Sheriff of Grays Harbor County,
et al., Appellants*, AMERICAN SURETY COMPANY
OF NEW YORK *et al., Defendants.*[1]

[1]Reported in 60 P. (2d) 31.

114

*W. H. Abel* and *Geo. D. Abel,* for appellants.

*F. L. Morgan* and *A. P. Wilson* (*Beth E. Morgan,* on the brief), for respondent.

Beals, J.—This action was instituted by Nellie Maciejczak for the purpose of recovering damages for the alleged wrongful death of her husband, Thomas Maciejczak. Plaintiff sued, as administratrix of the estate of her late husband, upon two causes of action: first, to recover damages for pain and suffering endured by him, and second, for the benefit of herself as his widow and sole dependent. The defendants named in plaintiff's third amended complaint, upon which the action was tried, were Jeff Bartell, sheriff of Grays Harbor county, American Surety Company of New York, a corporation, surety on the sheriff's bond, and A. E. Anderson, C. M. Stearns, W. L. Maynard and J. A. Nienau, deputy sheriffs. As to Maynard and Nienau, the action was dismissed at the close of plaintiff's case.

It appears that the deceased, Thomas Maciejczak, with his wife, the plaintiff in this action, owned and operated a farm in Grays Harbor county. July 20, 1934, Mr. Maciejczak was arrested, having been charged with the offense of malicious destruction of property. He was given a preliminary hearing before a justice of the peace, was bound over for trial, and committed to the county jail.

In the complaint upon which the action was tried, plaintiff alleged the arrest of her husband by the defendant sheriff, acting through his deputies, and that, at about nine o'clock on the evening of July 25th, the sheriff and his deputies assaulted Mr. Maciejczak, severely beating him and thereafter binding him to the bars of the jail corridors, leaving him in that position during the entire night without care or medical atten-

tion; that the defendants (other than the surety company) threatened Maciejczak with severe punishment and with deportation to Poland, his native land; that, as a result of the treatment of Mr. Maciejczak, he was reduced to a state of frenzy, and without medical attention, was charged with insanity, and by the superior court was ordered taken to the state hospital for the insane at Steilacoom, where he died July 28, 1934, as the result of the treatment which he had received at the hands of the defendants.

By their answer, the defendants denied any wrongful acts on their part and, after pleading the arrest of Thomas Maciejczak under a lawful warrant and his commitment to the county jail, alleged that he became violently insane; that he attempted to kill other prisoners confined in the jail and attempted to kill himself by striking his head against the walls and floor, thereby inflicting upon himself injuries, from the result of which he died. Defendants alleged that, in the exercise of their duty, they restrained Mr. Maciejczak and overpowered him, using no unnecessary violence. They further alleged that they called a physician to attend Mr. Maciejczak, who examined and treated him. The material affirmative allegations of the answer were denied by plaintiff in her reply.

Upon trial of the action before the court sitting with a jury, a verdict was rendered awarding plaintiff, upon her first cause of action, the sum of five thousand dollars, and upon the second cause of action, the sum of $11,500. The verdict also included an award against the surety company in the sum of five thousand dollars, that being the amount of its bond. Defendants' motion for a new trial, or in the alternative for judgment in their favor notwithstanding the verdict, having been denied, judgment was rendered on the verdict in

plaintiff's favor, from which judgment defendants Jeff Bartell, C. M. Stearns and A. E. Anderson have appealed.

Error is assigned upon the admission of evidence over appellants' objection; upon the exclusion of evidence upon respondent's objection; upon the giving of certain instructions and the refusal of other instructions requested by appellants; upon alleged misconduct of counsel; and upon actions on the part of the court which appellants allege were erroneous and prejudicial. Error is also assigned upon the form of the judgment, the same not providing that the judgment against the surety company be considered as a portion of the judgment against the sheriff; upon the denial by the trial court of appellants' motion for a directed verdict; upon the denial of their motion for judgment in their favor notwithstanding the verdict; and upon denial of their motion for a new trial.

■ Appellants argue that the utmost which it can be contended respondent's case shows is that the decedent was hit over the head with blackjacks or saps by appellants Stearns and Anderson. It clearly appears that, while decedent was confined in the county jail, he became, at least to some extent, irrational, and. that the sheriff and his deputies forcibly subdued him and placed him under such physical restraint that he could not injure himself or anyone else. Appellants argue that, even if a question for the jury was presented as to whether or not excessive force was used, there is nothing from which it can fairly be inferred that excessive force was the proximate cause of the injuries to, and the death of, decedent, and that the jury could only speculate concerning the amount of force which Maciejczak had used upon himself and the resulting extent of his self-inflicted injuries. Appellants invoke

the well-recognized rule stated in 17 C. J., § 166, p. 1304, title "Death:"

"Where death may have resulted from either of two causes, for one of which defendant would be liable, and for the other not liable, plaintiff must show with a reasonable certainty that the cause for which defendant is liable produced the result."

Appellants cite many other authorities to the same effect.

The evidence introduced by respondent tended to prove that Thomas Maciejczak was a quiet, inoffensive, rather ignorant farmer, who, by unceasing industry and painful economy, had succeeded in turning his acres of rough land into a valuable and thriving farm; that years of controversy with a railroad company which had built a branch line through his land, and loss suffered by him through alleged wrongful acts of the railroad company, had brought Mr. Maciejczak to a state of mind in which he felt justified in taking the law into his own hands, as the result of which he evolved and put into operation a plan to force the railroad to cease using the track across his property. This resulted in the arrest of Mr. Maciejczak, with the result that he was confined in jail. This worried him greatly and caused him to fear that he would be killed, or at least deported. He became extremely nervous and doubtless manifested irrational symptoms.

It was appellants' theory that it was necessary to physically subdue Mr. Maciejczak and place him under restraint; that this was done without the exertion of unnecessary force; and that any injuries which Mr. Maciejczak received were self-inflicted. Respondent's evidence tends to prove that Mr. Maciejczak was brutally beaten over the head, and that his death a few days later was the direct result of the injuries inflicted upon him by appellants. On the other hand,

appellants contend that Mr. Maciejczak's death was due to acute mania, and that the injuries which he inflicted upon himself constituted a contributing cause.

Careful examination of the record convinces us that the rule relied upon by appellants is not applicable to the situation here presented. The evidence presents a question upon which the jury should pass. The trial court did not err in denying appellants' motion for judgment in their favor as matter of law.

Many questions are presented on this appeal. On respondent's objection, the trial court refused to allow appellants to testify as to what they did and as to what the deceased did at the time of the alleged assault upon the latter; the court being of the opinion that such testimony came within the bar of Rem. Rev. Stat., § 1211 [P. C. § 7722], which reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen (14) years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen (14) years: Provided, further, that this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

Respondent's second cause of action was brought

pursuant to Rem. Rev. Stat., §§ 183, 183-1 [P. C. §§ 8259, 8260], which read as follows:

"§ 183. When the death of a person is caused by the wrongful act, neglect or default of another, his personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony."

"§ 183-1. Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death. In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

Two questions are presented in connection with the ruling of the trial court above referred to, of which appellants complain: First, whether or not the word "transaction," as used in § 1211, *supra*, includes an assault committed upon the deceased, or, stated more generally, whether the statute applies to actions arising *ex delicto* or only to actions arising *ex contractu*; and second, concerning the second cause of action, as it appears that, under the two sections last quoted, the estate of the deceased, as represented by the administratrix, merely sues for the benefit of the widow and not for the advantage of the estate, whether or not the bar of the statute should be held applicable to appellants as parties to the record.

■ In connection with the question now under examination, it becomes important to study the history of § 1211, *supra*. The corresponding provision of the Code of 1881 reads as follows:

"Sec. 389. Any person offered as a witness shall not be excluded from giving evidence, by reason of his interest in the event of the action, as a party thereto, or otherwise, but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased or insane person, or as a guardian of a minor under the age of fourteen years, then a party in interest, or to the record, shall not be admitted to testify in his own behalf."

It appears, therefore, that the several amendments of the act have as a rule tended to lessen the limitations placed upon the testimony to be received, rather than to increase the same. Under the Code of 1881, a party in interest or to the record was prohibited from testifying on his own behalf. Under the law as it now stands, such a party may testify, subject to the statutory limitations.

The courts of other states have passed upon the question as to whether, in statutes similar to ours, the word "transaction" should be held to include acts tortious in their nature or be limited to relations arising out of contract. The authorities are in conflict, but we are of the opinion that, in the greater number of jurisdictions, the word "transaction" has been held to include torts. Transaction is, of course, a word broader in its scope than contract. In 3 Bouvier's Law Dictionary, Third Revision, by Francis Rawle, 1914, the word is defined as follows:

"TRANSACTION. The doing or performing of any business; the management of an affair. Montague v. Thomason, 91 Tenn. 173, 18 S. W. 264. A group of facts so connected together as to be referred to by a single legal name; as, a crime, a contract, a wrong. Steph. Dig. Evid. art. 3. The term transaction is a broader one than contract; Roberts v. Donovan, 70 Cal. 113, 9 Pac. 180, 11 Pac. 599."

The word "transaction" is defined in Pomeroy's Code Remedies (5th ed.), § 367, as follows:

". . . a negotiation, or a proceeding, or a conduct of business, between the parties, of such a nature that it produces, as necessary results, two or more different primary rights in favor of the plaintiff, and wrongs done by the defendant which are violations of such rights."

In 4 Jones' Commentaries on the Law of Evidence in Civil Cases (ed. 1914), p. 789, it is said:

"Whatever may be done by one person which affects another's rights, and out of which a cause of action may arise, is a transaction. It is a *broader term than contract*, for while every contract is a transaction, every transaction is not a contract."

The matter is also referred to in 5 Jones' Commentaries on the Law of Evidence (2d ed.), p. 4261, § 2228, in which it is stated that:

"In the majority of jurisdictions the wording of the proviso has been held such as to extend its operation to actions ex delicto which are otherwise within its terms as well as to actions ex contractu."

The word being undoubtedly broader in its scope than contract, it is difficult to see how it can be construed not including relations arising *ex delicto*. Appellants argue that a transaction means "contractual or personal dealings," but a physical encounter is certainly a personal dealing. The statute now under discussion is, like statutes of limitation and the statute of frauds, based not upon abstract justice but upon the necessities of the case as demonstrated by human experience. Statutes of this class occasionally operate to defeat justice, but at the same time they are absolutely necessary for the prevention of fraud.

In 5 Nichols Applied Evidence, p. 4467, it is stated that "The statutes apply to actions based on torts as well as to actions based on contracts."

In 28 R. C. L., p. 494, § 80, it is stated that:

"Ordinarily a statute excluding the testimony of the surviving party, where one of the original parties to a contract or cause of action is dead, applies to an action in tort as well as to an action on contract."

In the case of *Miller v. Walsh's Administratrix,* 240 Ky. 822, 43 S. W. (2d) 42, the court of appeals of Kentucky held that a truck driver, sued jointly with the owner for the death of a pedestrian, was incompetent to testify on behalf of the owner concerning matters connected with the speed and movement of the truck, the sounding of the horn, etc., it being held that such matters constituted a transaction with the deceased and were incompetent.

The court of civil appeals of Texas, in the case of *Dominguez v. Garcia,* 36 S. W. (2d) (Tex. Civ. App.) 299, quoted with approval from the case of *Holland v. Nimitz,* 111 Tex. 419, 232 S. W. 298, 299, 239 S. W. 185, as follows:

"The words 'transaction with,' . . . have been held to include every method by which one person can derive impressions or information from the conduct, condition, or language of another."

In the case of *Stephens v. Short,* 41 Wyo. 324, 285 Pac. 797, the supreme court of Wyoming, in an action against a sheriff's administrator for injuries received by one under arrest, who was being transported from one place to another by automobile, held that the word "transaction" included such a situation as was presented in the action for negligently injuring the plaintiff, and that the bar of the statute applied.

The supreme court of Alabama, in the case of *Southern Natural Gas Co. v. Davidson,* 225 Ala. 171, 142 So. 63, held that the bar of the statute applied in an action for personal injuries received in an auto-

mobile collision, the driver of the defendant's truck having been killed in the accident.

In the case of *Foster v. Shepherd,* 258 Ill. 164, 101 N. E. 411, Ann. Cas. 1914B, 572, 45 L. R. A. (N. S.) 167, the supreme court of Illinois held that one from whom damages were sought because of the killing of one who was mistaken for a burglar, was not competent to testify concerning the transaction.

The supreme court of Missouri, in the case of *Leavea v. Southern R. Co.,* 266 Mo. 151, 181 S. W. 7, Ann. Cas. 1918B, 97, L. R. A. 1916D, 810, applied the rule in an action against a railroad company to recover damages for assault by the railroad's agent, it appearing that the agent of the railroad company had died prior to the trial. In the volume of the L. R. A. cited, is found an extensive note and discussion of various cases bearing upon this question. See, also, note to the case cited Ann. Cas. 1918B, 98.

The supreme court of Illinois, in the case of *Van Meter v. Goldfarb,* 317 Ill. 620, 148 N. E. 391, 41 A. L. R. 343, held that an accident resulting in death was a transaction within the meaning of a statute which allowed a person to testify in cases where the adverse party sued as executor, etc., if a person interested on the other side of the action testified concerning the "transaction."

While there are some cases in which it has been held that a statute similar to ours does not extend to tort actions, the weight of authority is undoubtedly the other way and should be followed in construing the statute law of this jurisdiction.

In this connection, we are not unaware of the questions which will arise under the rules laid down in the cases of *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639; *Marvin v. Yates,* 26 Wash. 50, 66 Pac. 131; *Kauffman v. Baillie,* 46 Wash. 248, 89 Pac. 548;

*Bardsley v. Truax,* 64 Wash. 400, 116 Pac. 1075; and *Slavin v. Ackman,* 119 Wash. 48, 204 Pac. 816; in which a party interested adversely to an estate was allowed to testify as to things done, as distinguished from transactions with or statements made by the deceased.

A different question, however, is presented in connection with respondent's second cause of action, which is prosecuted pursuant to Rem. Rev. Stat., §§ 183, 183-1, *supra.* Actions brought under the foregoing statutes are strictly statutory actions, which may be prosecuted for the benefit of certain classes of persons therein named. In this case, the action is prosecuted for the benefit of the widow. This statute was enacted long after § 1211, concerning witnesses. Under chapter 129, Laws of 1909, p. 425, the heirs or personal representatives of one whose death was caused by the wrongful act or neglect of another might maintain an action for damages against the person causing the death. By § 183, *supra,* the action may be brought only by the personal representative of the deceased, § 183-1 providing that the action shall be for the benefit of the wife and certain other specified classes of persons. Under no circumstances does the estate of the decedent benefit by the action. Anything realized therefrom goes to the beneficiaries. A cause of action for wrongful death is not one which ever belonged to the decedent. The cause of action does not arise until his death, and is purely statutory.

It is undoubtedly the law that where a widow sues for the wrongful killing of her husband, the person responsible for the death may testify as a witness on the trial. In Ann. Cas. 1918B 99, in the note to *Leavea v. Southern R. Co., supra,* it is stated that it has been held that, in an action for damages for killing the plaintiff's husband, the defendant might

testify, since there was no contract or cause of action to which the husband was a party, citing the case of *Entwhistle v. Feighner*, 60 Mo. 214, wherein the court said:

"In the present case there was no contract or cause of action to which the deceased husband was a party. The proviso in the statute was enacted for the purpose of putting parties on an equal footing, and not allowing a living party to give his version of a contract when he could not be confronted by the other party in consequence of death. When the husband was killed, then it was for the first time that the cause of action accrued to the plaintiff as his widow. Had the husband survived, this action never could have been brought. It is an action in which plaintiff and defendant only could be parties, for it did not arise till after the husband's death."

The supreme court of Pennsylvania, in the case of *Mann v. Weiand*, 81½ Pa. 243, an action for the wrongful death of the plaintiff's husband, said:

"This action is not by or against an executor, administrator, or guardian; nor is the assignor of the thing in action dead. There is no assignment, either actually or constructively. If an action had been brought by Weiand to recover damages for injuries he had sustained, it would have survived to his personal representatives under the eighteenth section of the act of April, 1851, *supra;* and after his death the plaintiff in error would not have been competent to testify to matters which occurred during the life of Weiand. This action, however, was not brought by him, nor is it for the recovery of damages for injuries he sustained; but it is for injuries his wife sustained by his death. It is for a cause of action her husband never had. It arose on and after his death, and accrued to his widow. In case of injury causing death, the first section of the act of April 26th, 1855, Pur. Dig. 1094, pl. 3, withholds the right of action from the personal representatives of the decedent, and gives it only to the husband, widow, chil-

dren, or parents of the deceased. The present right of action never existed in favor of Weiand, nor during his life did it exist against the plaintiff in error. When the law created this right of action against the plaintiff in error, it gave it to the defendant in error. It is true the death of her husband was an act precedent to her right of action; but so was the negligence of the plaintiff in error. The two united enacted the cause and gave it to the widow. It had no existence prior to that time. It originated between two living persons. Each is now a party to this action. The learned judge therefore erred in not permitting the plaintiff in error to testify, and the judgment must be reversed.''

The opinion of the supreme court of Texas, in the case of *Wallace v. Stevens,* 74 Tex. 559, 12 S. W. 283, is to the same effect. In the foregoing cases, the widow was the nominal, as well as the actual, party plaintiff.

The supreme court of Tennessee, in the case of *Hale v. Kearly,* 67 Tenn. 49, held that, in an action instituted by a widow in the name of the administrator of her husband's estate, but for her benefit and for the benefit of a minor child, the action being based upon the wrongful killing of her husband, the defendant should be allowed to testify as to the circumstances of the killing. In the course of its opinion, the court said:

''This testimony was held incompetent, because it is an action by the administrator of a deceased party, and the testimony offered was as to transactions with or statements of the intestate. It is true that by sec. 3813$d$ of the Code, evidence of such transaction or statement is made incompetent in all cases in which judgment may be rendered for or against the administrator. But while it is true that the administrator of Daniel Kearley is the plaintiff in this suit, it is also true that he is merely a nominal party, and that the estate of his intestate has no interest whatever in the

result of the suit, and that no judgment can be rendered either for or against him which can affect the estate of his intestate.

"We do not think the statute was intended to exclude the testimony of a party situated as defendant Hale is in this case. We are therefore of opinion that the court erred in excluding the evidence, and for this error the judgment is reversed."

The supreme court of Alabama, in the case of *Kuykendall v. Edmondson,* 205 Ala. 265, 87 So. 882, considered a question very similar to that now under discussion. The action was brought by the administratrix of the estate of David Edmondson, under a statute which authorized the maintenance of such a suit by the personal representative of a deceased. The trial court refused to allow the defendant to testify as to the acts of himself and the deceased at the time of the killing, and upon appeal this ruling was held erroneous. The court called attention to the statute, which reads:

" 'The damages recovered are not subject to the payment of debts or liabilities of the testator or intestate, but must be distributed according to the statute of distribution.' "

This is similar to our statute, which provides that any recovery shall inure to the benefit of certain named classes of heirs. In the course of its opinion, the court said:

"The suit must be brought by the administrator of the estate, not for the benefit of the estate, but for the distributees. If any damages are recovered the distributees, and not the estate, receive it. The widow and children, if any, or next of kin of deceased, and not his estate, receive the damages, if any are recovered. The cause of action arose after the death of Edmondson, and the damages belong to his distributees and not his estate. The administrator must hold the damages, if recovered, for distribution only. If

the estate of deceased is interested in the result of the suit, then the damages would go to the exemptions of widow and minors, or either, cost of administration, payment of debts, and then to his distributees; but section 2486 expressly declares the contrary.''

Some courts have held that, as such an action as respondent's comes within the letter of the act, and as the estate would be liable for costs, it should be held that the statute applies; but we prefer to follow the spirit rather than the letter of the law. The case of *Miller v. Walsh's Administratrix,* 240 Ky. 822, 43 S. W. (2d) 42, *supra,* is not an authority against our position on this branch of the case, as this phase of the situation was not discussed, and the opinion does not indicate whether or not the estate had a beneficial interest in any sum recovered.

In construing such a statute as § 1211, *supra,* attention must be paid to the reason for the rule therein laid down. The first proviso was manifestly placed in the statute for the protection of the estates of deceased or incompetent persons against unjust claims, and has nothing to do with actions *inter vivos*. As was stated in the authorities quoted, in such an action as this the estate of the deceased is not interested. Whether or not costs could be taxed against the estate, need not here be determined. In any event, we hold that a mere interest to the extent of costs would not be sufficient to require a holding that the estate was an interested party to the action, within the meaning of the statute now under discussion. In the case at bar, respondent joined, as she was permitted to do, two causes of action, one for damages for the injuries suffered by her deceased husband during his lifetime, the other for damages in her favor as widow for his alleged unlawful killing. As we hold that appellants

were entitled to testify as to the second cause of action, unimpeded by the statutory bar, it follows that the judgment appealed from must be reversed.

Appellants argue that the trial court erred in connection with the admission of testimony concerning the death of one Eddie Johns. This man, who had been convicted of a serious offense, was confined in the county jail when Maciejczak was placed therein, and occupied cell No. 1 in tank No. 3, from which he doubtless observed what happened in connection with Maciejczak's restraint. Respondent took steps to take Johns' deposition, and on the day before the deposition was to be taken, Johns, who had been ill for some time, was operated on and died.

Of course, it was competent for either party to this action to account for Johns' absence by showing that he was dead. Appellants argue that respondent was allowed to go further than this, and by testimony which was admitted, give the jury the impression that Johns had been operated on at such a time as to prevent the taking of his deposition for use in this case. Some improper testimony was admitted, but the court instructed the jury that the sole purpose of the testimony received in this connection was to show the reason for the absence of the deposition of Eddie Johns, and we hold that this instruction cured any error which may have occurred in the admission of testimony.

In rebuttal, the court, over appellants' objection, admitted in evidence a photograph of Mr. and Mrs. Maciejczak, which had been taken eighteen years prior to the trial. Appellants contend that this was error, as the photograph was taken at too remote a period to constitute competent evidence as to the physical condition of the deceased just prior to the time of his death. While the photograph was of

doubtful probative value, the ruling of the trial court admitting the same cannot be held reversible error.

· ██ Appellants complain of several hypothetical questions which were propounded to two doctors called as witnesses on behalf of respondent. Appellants contend that these questions excluded many factors which the testimony showed existed, and omitted all reference to the physical condition of the decedent prior to his death.

Hypothetical questions such as those with which we are here concerned should include a statement of all admitted facts bearing upon the question upon which the opinion of the witness is sought. Generally speaking, the question may be so framed as to conform to the theory of the party propounding it. Appellants do not contend that the questions of which they complain contained any improper matter. They object merely to the omission of certain matters which they contend should have been included.

Such hypothetical questions are necessarily long and complicated. In passing upon such questions, the trial court has a considerable discretion. On cross-examination, opposing counsel may, in turn, propound questions presenting other theories. It cannot be held that the trial court committed reversible error in overruling appellants' objections to the questions as asked.

██ Appellants next complain of counsel for respondent, contending that respondent's counsel was guilty of misconduct which was not cured by the instructions of the court, and which entitled appellants to a new trial. This action was bitterly contested throughout a trial lasting several days. While respondent's counsel at times interjected remarks which were improper, the jury, on appellants' request, were instructed to disregard such statements, and we hold that, on this phase of the case, no error occurred

which entitles appellants to a new trial. As to portions of the argument of respondent's counsel of which appellants complain, the court fully and properly instructed the jury that they should decide the case upon the evidence, and we find no reversible error in this connection.

At the request of appellants' counsel, the jury were taken to the county jail to view the scene of the alleged assault. The trial judge accompanied the jury, and for the purpose of illustrating certain of the evidence, assumed certain positions upon the floor of the jail, as we understand the matter, for the purpose of enabling the jurors to determine the degree of visibility from the tanks in which some of the witnesses had been confined.

While these actions were improper, we hold that they were, as shown by the record, invited by appellants, and that the record does not support appellants' contention that, after the return of the court and jury to the courthouse, appellants' counsel made any sufficient objection to the specific matters of which they now complain, or asked for a mistrial, which it would seem would have been the only appropriate remedy, as the situation could hardly have been bettered by any instruction.

Appellants argue that their motion for a new trial should have been granted, for the reason that respondent, as part of her case in chief, was permitted to introduce, over objection, considerable testimony to the effect that her deceased husband was a good, law-abiding citizen, was not quarrelsome, and was a kind husband. Ordinarily, it might well be contended that such testimony was not properly a part of respondent's case in chief, but in view of the pleadings and appellants' opening statement to the jury, which is contained in the record, and also of the

cross-examination of some of respondents' witnesses, we cannot say that the admission of the testimony of which appellants complain constitutes such error as entitles appellants to a new trial.

Appellants excepted to several instructions given by the trial court. Instruction No. 19 reads as follows:

"Upon the first cause of action, for which the plaintiff seeks to recover for pain and suffering of the deceased through the acts of the defendants: I instruct you that, if your verdict should be for the plaintiff in this cause of action, it is to be limited to the actual pain and suffering of Thomas Maciejczak on July 25, 1934, to the time of his death July 28, 1934; and you are not to allow for any pain and suffering sustained by him through self-inflicted injuries, if you find said self-inflicted injuries resulted through no fault of the defendants."

Appellants excepted to this instruction upon the ground that the last portion thereof implied that the self-inflicted injuries of the decedent may have resulted through appellants' fault, and that no such matter should have been submitted to the jury. The instruction certainly called for consideration by the jury of the question of whether or not the appellants might have been at fault in permitting the deceased to inflict injuries upon himself. Respondent pleaded no such condition, nor did she raise any such issue. Appellants requested an instruction telling the jury that, if their verdict should be in favor of respondent upon the first cause of action, the same should be limited to the actual pain and suffering endured by Thomas Maciejczak from July 25, 1934, to the time of his death, July 28th following, "and you are not to allow for any pain or suffering sustained by him through self-inflicted injuries."

We fail to find any basis in the record upon which

the jury might have found that appellants, or any of them, were responsible for any injuries which Maciejczak inflicted upon himself. In this connection, the responsibility of the appellants Stearns and Anderson is to be considered as distinguished from the responsibility of the sheriff. While deputy sheriffs are more than mere agents, such a deputy cannot be held liable for the acts of other deputies over whom he has no authority, or, generally speaking, for matters beyond his own sphere of activity. The instruction complained of introduced into the case an element which was not proper for the consideration of the jury.

Two witnesses for the appellants, Messrs. Tompkins and Chamberlain, who had acted as traveling guards in removing Mr. Maciejczak from Grays Harbor to the asylum at Steilacoom, testified concerning Maciejczak's actions while en route to the asylum. Each witness stated that Maciejczak was very muscular and powerful and appeared to have full use of his strength, which he endeavored to use. In this connection, the trial court instructed the jury that, with reference to the testimony given by the traveling guards, the jury should consider the same for no purpose save for the purpose of showing that Maciejczak was insane. Appellants excepted to this instruction upon the ground that the jury should have been entitled to consider the testimony of the witnesses as to the physical strength exerted by the deceased.

This exception is well taken. The physical condition of the deceased on the day he was removed to the asylum was proper to be considered in connection with the testimony offered by respondent which tended to prove that the deceased had been unmercifully beaten and abused the night before.

In its preliminary statement of the issues, the trial court told the jury:

"'This is an action brought by the plaintiff, Nellie Maciejczak, as administratrix appointed by the court to recover certain damages against the defendants . . .'"

This was an unfortunate statement, as possibly conveying to the minds of the jurors the impression that the administratrix had been appointed for the purpose of recovering damages in the pending action.

 Appellants complain of the form of judgment, in that it does not provide that the five thousand dollar judgment against the sheriff's bond is a part of the other awards, and not in addition thereto. The judgment in this particular is clearly defective.

For the reasons assigned, the judgment appealed from is reversed, with instructions to the trial court to grant appellants' motion for a new trial.

MAIN, TOLMAN, MITCHELL, and GERAGHTY, JJ., concur.

HOLCOMB and STEINERT, JJ., concur in the result.

BLAKE, J. (dissenting)—I dissent.

*First:* I cannot agree to the construction placed upon Rem. Rev. Stat., § 1211 [P. C. § 7722], with respect to the action for wrongful death. The statute provides:

". . . in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, *or as deriving right or title by, through or from any deceased person* . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with . . . any such deceased . . . person. . . ." (Italics mine.)

There is no implication whatsoever in the statute that the ban imposed is effective only in cases in which the estate has a beneficial interest. On the contrary, the phrase I have italicized plainly refutes such an implication. For the *right* which the administrator is seeking to enforce in the action for wrongful death certainly *derives from the estate of the deceased person.*

In *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301, this court said:

"A right of action for wrongful death is an asset sufficient in itself to warrant the appointment of an administrator or an administratrix, as the case may be, although *that is the only property of the decedent within the jurisdiction.*" (Italics mine.)

*Second:* The instruction on pain and suffering, quoted in the majority opinion, was, at worst, ambiguous. Read in connection with other instructions on the same subject, it could not have been misleading. For instance, in instruction No. 22, the court advised the jury:

"If the injuries were inflicted by the deceased, himself, without negligence or undue or excessive force on the part of the sheriff's force a verdict should be for the defendants."

And again, in instruction No. 27, the court advised the jury:

"In this case, one of the elements of damages is the pain and suffering incurred by the deceased by reason of the wounds and injuries he received through the acts and neglect of the defendants—that is, the physical and mental pain and suffering caused to the deceased, Thomas Maciejczak, prior to his death. In this case, if you find from the evidence as a fact that the said Maciejczak received such injuries and suffered such pain and suffering, and that such injuries and suffering caused by the fault or neglect of the

defendants, or either of them, then you are entitled to assess the damages caused to said Maciejczak, by reason of suffering such injuries, and you will fix and assess such damages in an amount which you find will compensate for such injuries, not, however, in excess of $5,000.00, which is the amount in the complaint.''

*Third:* The answer and the defense were predicated on the theory that Maciejczak was insane; that he ''died of acute insanity and the injuries inflicted by himself.'' The whole purport of the testimony of the traveling guards was that he acted like an insane man from the time they took charge of him at Montesano until they delivered him at Steilacoom. They testified that he was resistive and tried to injure himself. But they did not have to beat him into submission. There is no intimation that he sustained any further injuries while in the custody of the guards.

Conceding the instruction limiting consideration of the guards' testimony to the issue of insanity to be erroneous, I cannot see how, under these facts, it could have prejudiced appellants in any way. I fail to see what bearing the fact that, when the guards took charge of Maciejczak, he still had considerable strength, had upon the issue as to whether he was unmercifully beaten by appellants the night before.

MILLARD, C. J., concurs with BLAKE, J.