[No. 29695-7-I.   Division One.   May 17, 1993.]

ANDREW ERICKSON, *Individually and as Personal Representative,* ET AL, *Appellants,* v. ROBERT F. KERR, ET AL, *Respondents.*

*William C. Severson, Charles F. Vulliet,* and *Stoel Rives Boley Jones & Gray,* for appellants.

*Craig L. McIvor, Patricia N. Welch,* and *Lane Powell Spears Lubersky,* for respondents.

SCHOLFIELD, J. — Andrew Erickson, for himself and as personal representative of the estate of his wife Phillipa Erickson, and his son Craig Erickson seek a new trial based on certain evidentiary rulings in a medical malpractice trial against Mrs. Erickson's doctor, Dr. Robert Kerr. We affirm in part and reverse in part.

Dr. Kerr first treated Mrs. Erickson with the delivery of the Ericksons' only child in 1969. Sometime between 1969 and 1980, Mrs. Erickson came to Dr. Kerr for help with insomnia. By 1980, she was receiving periodic prescriptions for Seconal, a barbiturate. In 1985, Dr. Kerr changed this to Halcion, a benzodiazepine drug similar to Valium.

In February of 1986, Mrs. Erickson began having symptoms of menopause, including a feeling of mild depression. Dr. Kerr determined that Mrs. Erickson was not clinically depressed and that her depression was part of her menopause. He began treating her with estrogen. About a month later (in March of 1986), Mrs. Erickson returned to Dr. Kerr. She was still experiencing depressed moods, so Dr. Kerr started her on an antidepressant, Asendin.

By June of 1986, Mrs. Erickson was taking Tenormin (a blood pressure medication), Asendin, and Halcion, as well as periodic injections of estrogen. On June 20, 1986, Dr. Kerr's records indicated that Mrs. Erickson "[f]eels very good, excellent sleeping and mood when awake." In September of 1986, Mrs. Erickson reported an increase in her feelings of depression; in response to this, Dr. Kerr increased her Asendin. On the next visit he noted in his record that the Asendin had helped.

On February 6, 1987, Dr. Kerr noted that Mrs. Erickson was not feeling depressed. Dr. Kerr discontinued her Asendin. Two weeks later, he adjusted her blood pressure medication and prescribed Seconal for sleep. On March 6, Dr. Kerr again adjusted her blood pressure medication. At her request, he also changed her sleep medication back to Halcion, although

she apparently did not fill that prescription. Three days later, Mrs. Erickson committed suicide by Seconal overdose.

Beginning in June of 1986, Mrs. Erickson was also undergoing a series of dental surgeries for titanium implants. Mrs. Erickson suffered during this yearlong process, and there was evidence that she was provided pain medication. The dental treatment was completed just before Mrs. Erickson committed suicide.

Friends of Mrs. Erickson testified that at various times before her death she was "not herself" — she was not as talkative, she spoke slowly, and she walked and drove more slowly than usual. Plaintiffs argued that this showed Mrs. Erickson was severely depressed and that Dr. Kerr should have recognized and treated her depression. Plaintiffs also presented the testimony of a psychiatrist and a general practitioner who testified that Dr. Kerr violated the standard of care by failing to diagnose Mrs. Erickson's severe depression. The defendants presented the testimony of two specialists in internal medicine, both of whom testified that Dr. Kerr complied with the standard of care in all respects.

The plaintiffs moved to exclude any testimony by Dr. Kerr of transactions he had with Phillipa Erickson that are barred by the deadman's statute, RCW 5.60.030. The trial court denied the motion, ruling that the deadman's statute applied, but because the plaintiffs had to use Dr. Kerr's records as part of their case in chief, it would be unfair to prevent Dr. Kerr from explaining what those transactions meant. The court stated:

> This is a case of waiver. The plaintiffs will use [Dr. Kerr's] records as part of their case-in-chief. It may not be the sole basis, but part of his records will be used as part of their case-in-chief. And this constitutes waiver by the plaintiffs, if they decide to use Dr. Kerr's records.

The Ericksons then introduced Dr. Kerr's medical records into evidence, eliciting testimony regarding his treatment of Mrs. Erickson and conversations he had with her.

The jury found for Dr. Kerr, and judgment was entered on November 1, 1991. The Ericksons and the estate appeal, assigning error to jury instructions and several of the trial court's evidentiary rulings, including the ruling on the deadman's statute.

### THE DEADMAN'S STATUTE

The Ericksons contend the deadman's statute should have applied to keep certain testimony by Dr. Kerr out of evidence, but not documentary evidence, and that given the court's ruling that the deadman's statute was waived by the introduction of medical records, they had no alternative but to introduce Dr. Kerr's testimony.

The deadman's statute, RCW 5.60.030, provides in relevant part:

> [I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person . . .: PROVIDED FURTHER, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action.

A commonly stated rationale for the statute is that

> when the lips of the one who is said to have made the statement, or with whom the transaction is alleged to have been had, are sealed in death, it becomes difficult, and often impossible, to rebut such adverse testimony.

*McFarland v. Department of Labor & Indus.*, 188 Wash. 357, 363, 62 P.2d 714 (1936). *See also Thompson v. Henderson*, 22 Wn. App. 373, 591 P.2d 784 (1979).[1]

---

[1]As simply as the rationale may be stated, application of the deadman's statute is complicated by its many exceptions, its obscure language, and its unconvincing policy grounds. Deadman's statutes are almost universally disfavored by legal scholars:

> Most commentators agree that the expedient of refusing to listen to the survivor is, in the words of Bentham, a "blind and brainless" technique. In

Washington's deadman's statute applies in an action where "the adverse party sues or defends as executor, administrator or legal representative of any deceased person". RCW 5.60-.030. In the present case, the Ericksons and the estate — both "adverse parties" under the statute[2] — sued in two capacities: Mr. Erickson as representative of his wife's estate, and Mr. Erickson and his son in their own capacities under the wrongful death statute. Analysis of whether the deadman's statute applies is different under each cause of action.

a. The Ericksons' Wrongful Death Action.

■ Insofar as the suit proceeded under the wrongful death statute, Mr. Erickson and his son Craig were not suing as legal representatives of Mrs. Erickson's estate, and thus by its very terms the deadman's statute does not apply. This principle was made clear in *Maciejczak v. Bartell*, 187 Wash. 113, 60 P.2d 31 (1936), in which the court stated that the deadman's statute does not apply in a wrongful death action because it is not an action by the estate. There, a man died allegedly as the result of a beating in a county jail. His widow sued under two causes of action: as the administratrix of her husband's estate, and in a wrongful death action for herself as his widow and dependent. To defend against the suit, the defendants wished to present evidence

---

seeking to avoid injustice to one side, the statute-makers ignored the equal possibility of creating injustice to the other. The temptation to the survivor to fabricate a claim or defense is obvious enough, so obvious indeed that any jury will realize that his story must be cautiously heard. A searching cross-examination will usually, in case of fraud, reveal discrepancies inherent in the "tangled web" of deception. In any event, the survivor's disqualification is more likely to balk the honest than the dishonest survivor. One who would not balk at perjury will hardly hesitate at suborning a third person, who would not be disqualified, to swear to the false story.

The lawmakers and courts are being brought to see the blindness of the traditional survivors' evidence acts, and liberalizing changes are being adopted. 1 J. Strong, *McCormick on Evidence* § 65, at 251 (4th ed. 1992).

Until the Washington Legislature repeals or alters the statute, Washington courts are constrained to give the deadman's statute effect.

[2]In the statute, the "adverse party" is the party representing the deceased who is adverse to the "party in interest" wishing to testify in his or her own behalf regarding a transaction or statement by the deceased.

that the husband required restraint due to his acute "mania" at the time of his arrest, and that his death resulted from injuries he inflicted upon himself while in custody. Citing the deadman's statute, the trial court excluded evidence of what the defendant jailers "did and as to what the deceased did at the time of the alleged assault". *Maciejczak*, at 119.

The court held that the widow, suing in her own capacity under the wrongful death statute, was not protected by the deadman's statute because her right of action only accrued upon her husband's death.[3] Because a wrongful death right of action is purely statutory, the estate stood to gain nothing by the widow's suit. The court concluded that "where a widow sues for the wrongful killing of her husband, the person responsible for the death may testify as a witness on the trial". *Maciejczak*, at 125. Judgment in favor of the widow was reversed. *Maciejczak*, at 129-30.

Applying *Maciejczak* to the present case, we find that the trial court erred in applying the deadman's statute to the Ericksons' wrongful death action. The Ericksons are not protected by the deadman's statute because they are not suing as representatives of the estate, a requirement of the statute. The estate had nothing to gain by the Ericksons' pursuit of damages under the wrongful death statute.

---

[3]An action for wrongful death is not a claim that will benefit a deceased's estate, although it may only be maintained by the deceased's personal representative for the benefit of those parties noted in the statute. *Wood v. Dunlop*, 83 Wn.2d 719, 521 P.2d 1177 (1974). *See Gray v. Goodson*, 61 Wn.2d 319, 378 P.2d 413 (1963) (wrongful death statute is not a survival statute, but rather creates a new and original cause of action in certain beneficiaries); *Purdy & Whitfield v. Department of Labor & Indus.*, 12 Wn.2d 131, 145, 120 P.2d 858 (1942) (in a workers' compensation proceeding, testimony was not incompetent under the deadman's statute, because the right of the guardian or minor children to receive compensation "would not be derived by, through, or from the deceased, nor as compensation for the deceased's *injury*, but would be a new, original right in them arising from and by reason of the injured workman's *death*.").

*See also* 81 Am. Jur. 2d *Witnesses* § 578 (1992): "Where the plaintiff in a wrongful death action has sued as the administrator or personal representative of the deceased, the damages recoverable generally do not become assets of the decedent's estate, so that the prohibition of the dead man statute does not apply."

Because the trial court ruled that the Ericksons waived protection of the statute, a conclusion we later reject,[4] the relevant testimony was allowed into evidence. Thus, with regard to the Ericksons' wrongful death cause of action, Dr. Kerr properly testified about his treatment of Mrs. Erickson unencumbered by the deadman's statute.

b. The Estate's Cause of Action.

In *Maciejczak*, the estate's cause of action required a different analysis from the widow's. The court first determined that the alleged beating was a "transaction" within the meaning of the statute, and then found that the trial court had properly refused to allow the defendants to testify in the estate's cause of action.

The test for whether something is a "transaction" is very broad.[5] In the present case, statements by Mrs. Erickson to Dr. Kerr clearly come within the deadman's statute as "statements"; Mrs. Erickson, if still living, could contradict Dr. Kerr's memory with her own knowledge of what transpired. Furthermore, the medical treatment of Mrs. Erickson is a "transaction" under the statute because it is the doing of "some business" between Dr. Kerr and Mrs. Erickson. *In re Estate of Wind*, 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947). Consequently, we find that the deadman's statute applies in the suit by the estate to prevent Dr. Kerr from testifying about transactions and conversations he had with Mrs. Erickson.

---

[4]Our affirmance of the trial court's allowance of Dr. Kerr's testimony into evidence is based on a proper application of the deadman's statute, and not on the waiver theory adopted by the trial court. *State v. Halsen*, 111 Wn.2d 121, 757 P.2d 531 (1988).

[5]"A transaction . . . means the doing or performing of some business between parties, or the management of any affair". *In re Estate of Wind*, 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947). The test for determining whether testimony "relates to a 'transaction' is whether the deceased, if living, could contradict the witness of his own knowledge." *Vogt v. Hovander*, 27 Wn. App. 168, 173, 616 P.2d 660 (1979). *See also In re Estate of Shaughnessy*, 97 Wn.2d 652, 656, 648 P.2d 427 (1982) ("transaction" includes torts); *Rabb v. Estate of McDermott*, 60 Wn. App. 334, 339, 803 P.2d 819 (1991) (sexual intercourse constitutes a "transaction" for purposes of the statute).

■ However, not all testimony about transactions with Mrs. Erickson is prohibited. The ban extends to "any transaction had by [the party in interest] with, or any statement made to him or her . . . by" the deceased. RCW 5.60.030. Generally, the deadman's statute does not bar documentary evidence, 5A K. Tegland, Wash. Prac., *Evidence* § 212, at 133-34 (3d ed. 1989), although it may limit testimony concerning documents. *Thor v. McDearmid*, 63 Wn. App. 193, 202, 817 P.2d 1380 (1991); *Wildman v. Taylor*, 46 Wn. App. 546, 731 P.2d 541 (1987).

In *Wildman*, the trial court stated:

> The key to understanding what an interested party is prohibited from doing under RCW 5.60.030 is the interpretation of the word "testifying". The statute, read narrowly, only prohibits the interested person from testifying in his or her own behalf. . . . The statute does not expressly prohibit the interested party from introducing documents or other written statements by the deceased . . .[.]

*Wildman*, at 550-51. After analyzing a number of Washington cases, the court concluded that the deadman's statute "is inapplicable to the introduction of written documentation, executed by the deceased, of a transaction or statement by the deceased." *Wildman*, at 553. The court noted that although certain lease agreements the plaintiff wished to introduce were admissible,

> [t]his does not mean that Mr. Wildman will be permitted to testify about the meaning of the lease provisions or the letter. Such testimony by Mr. Wildman would be testimony on behalf of himself as to a transaction with or statement to or by the deceased and would violate the statute.
>
> Not all testimony by Mr. Wildman will be inadmissible, however. If there is an adequate foundation laid, he may testify that he received the letter and identify [the deceased's] signature on the letter.

(Citations omitted.) *Wildman*, at 553.

Similarly, relying in part on *Wildman*, the court in *Thor* held that although a letter written by the decedent could be introduced because it was a document outside the deadman's statute, the statute still prevented testimony by an interested party concerning the circumstances surround-

ing the letter. *Thor*, at 202. The defendant argued that she had the right to testify to transactions had with the decedent to "confirm, deny or otherwise explain" testimony by other witnesses concerning the defendant's interest in property which was the subject of the dispute. *Thor*, at 201. The Court of Appeals held that because plaintiffs had not delved into matters forbidden by the statute when cross-examining the defendant, they had not waived the statute. *Thor*, at 201-02.

Dr. Kerr argues that *Wildman* and *Thor* should be restricted to statements or documents signed by the deceased, although he offers no policy reason for adopting such a rule. Doctors' records are not signed by patients, and we see no reason why a signature per se should change application of the deadman's statute. We apply the reasoning of *Wildman* and *Thor*, and rule that the deadman's statute prohibits testimony, not documents.[6] The trial court thus erred in determining that the mere introduction of Dr. Kerr's medical notes constituted waiver of the deadman's statute.

Dr. Kerr also argues that the plaintiffs' introduction of his testimony, including nondocumentary evidence, constitutes a waiver that cannot be avoided by the "no-waiver" rule. Under that rule, "a party prejudiced by an evidentiary ruling who then introduces the adverse evidence in an effort to mitigate its prejudicial effect is not precluded from obtaining review of the ruling." *Dickerson v. Chadwell, Inc.*, 62 Wn. App. 426, 430, 814 P.2d 687 (1991), *review denied*, 118 Wn.2d 1011 (1992). The rule applies only if the trial court "has made a final and unequivocal ruling on the motion in limine". *Dickerson*, at 431. Dr. Kerr cites two statements to support his contention that the trial court's ruling was not final. We are not persuaded by Dr. Kerr's argument and citations to the record, and we find the trial court's ruling to be both final and unequivocal. Thus, the estate did not waive the deadman's statute.

---

[6]*See also Bentzen v. Demmons*, 68 Wn. App. 339, 842 P.2d 1015 (1993) (the deadman's statute does not bar documentary evidence, and the admission of financial documents in question cannot constitute a waiver).

Consequently, we conclude that the trial court's denial of the motion in limine as to the estate's cause of action was partially in error. While Dr. Kerr's records themselves cannot violate the deadman's statute, testimony concerning particular transactions between Dr. Kerr and Mrs. Erickson may. Thus, general questions concerning the circumstances under which Dr. Kerr made his notes would be allowable, whereas questions concerning conversations between Dr. Kerr and Mrs. Erickson would not be allowable without thereby waiving the statute.

### EXCLUSION OF TESTIMONY

Mr. Erickson testified in a deposition that he went to Dr. Kerr after his wife's suicide. On that visit, Dr. Kerr inquired about Mrs. Erickson, forgetting that she had died.

At trial, the defense moved in limine for an order excluding evidence of this conversation, arguing that its potential prejudice to Dr. Kerr outweighed any probative value (ER 403),[7] and that it was impermissible as a character trait under ER 404(b).[8] The trial court granted the motion.

On appeal, the Ericksons contend that Dr. Kerr's memory was central to his defense, and that the trial court improperly disallowed plaintiffs' counsel from impeaching Dr. Kerr's memory by introducing the evidence that he had forgotten Mrs. Erickson had died. Dr. Kerr contends the evidence would have been irrelevant and prejudicial.

 At issue was the reliability of Dr. Kerr's memory, not his character as manifested in a prior bad act. Thus ER

---

[7] ER 403 states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[8] ER 404(b) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

404(b) is inapplicable. Credibility of a witness is always at issue; one of the main functions of the jury is to determine whether any given witness is telling the truth. Here, Dr. Kerr's credibility goes to the heart of the malpractice issue.

We find that in light of the weight placed on Dr. Kerr's memory at trial, the trial court erred in finding that Dr. Kerr's question was "not substantive evidence of anything". It was certainly evidence of a poor memory, and while evidence of Dr. Kerr's poor memory is prejudicial, we do not find it to be unfairly so. The jury should have been able to weigh the event as indicative of a faulty memory.

### DeLaurenti's Testimony

In asking for damages of $2 million, Mr. Erickson presented testimony that he and his wife enjoyed a close and harmonious marriage. In rebuttal, Dr. Kerr offered the testimony of Anne DeLaurenti, Mrs. Erickson's friend and neighbor. The trial court denied the plaintiffs' motion in limine to exclude her testimony, based on a theory that the statements constituted admissions of a party opponent under ER 801-(d)(2).[9]

DeLaurenti testified that Mrs. Erickson told her that Mr. Erickson was an abusive husband and tight with money. She also testified that Mrs. Erickson said her husband should be considered the prime suspect if anything ever happened to her, though on cross examination she acknowledged that Mrs. Erickson said this in jest. Mr. Erickson argues on appeal that Mrs. DeLaurenti's testimony was irrelevant and unfairly prejudicial.

We find DeLaurenti's testimony concerning statements directly attributable to Mrs. Erickson to be hearsay. Mrs. Erickson's statements to DeLaurenti are not admissions against the interest of the claim for damages recoverable by her estate, and thus are not admissible under ER 801(d)(2). The trial court erred in allowing DeLaurenti's hearsay into

---

[9]ER 801(d)(2) states in part that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is (i) the party's own statement, in either an individual or a representative capacity".

evidence. However, the error was sufficiently preserved only as to the Ericksons' wrongful death cause of action, and was not preserved as to the estate.[10]

Furthermore, DeLaurenti's testimony concerned the issue of damages and was offered to show that the Ericksons did not have an ideal marriage. Damages recovered by the estate would be economic in nature, and it is not clear to this court that economic damages in favor of the estate would be impacted by the quality of the Erickson marriage.[11]

### EXCLUSION OF DR. SAKO'S RECORDS

Plaintiffs sought to introduce a medical notation that Mrs. Erickson's dentist, Dr. Sako, made after receiving a call from Mr. Erickson:

> Phone call from Mr. Erickson. Phillipa feeling unwell. Is on HBP medication, antidepressants, wants teeth out from implants. ADV, Mr. Erickson, Phillipa should have thorough physical. Also, advise Dr. Lord's office of conversation with Mr. Erickson.

The trial court admitted Dr. Sako's record with this entry deleted. The plaintiffs wished to enter the dentist's notations to support Mr. Erickson's contention that he was concerned about his wife and to rebut accusations that he was an indifferent, abusive husband. On appeal, the plaintiffs contend the notation was not hearsay because it was not offered for the truth of its assertion.

We do not find Mr. Erickson's argument persuasive. The plaintiffs presented other evidence that showed Mr. Erickson's concern and love for his wife, that he had made phone calls to Dr. Kerr, and that he had called Dr. Sako. Any purpose other than to show the truth of the matter asserted would be duplicative.

▇ Plaintiffs contend that the notation should come in as a business record. Doctors' records are normally admissible

---

[10]The plaintiffs' attorney objected to the hearsay admission of DeLaurenti's statements by stating: "[F]rom an evidentiary standpoint, . . . she's . . . attributing everything on a hearsay basis, . . . except as it relates to the estate."

[11]In arguing against allowing DeLaurenti's testimony, plaintiffs' counsel stated that the testimony is "not even relevant to the estate's claim for damages . . .".

in order to show events, conditions, or acts under the Uniform Business Records as Evidence Act, RCW 5.45.020.[12] However, records are not admissible if they express opinion, conjecture, or speculation. *Young v. Liddington*, 50 Wn.2d 78, 83-84, 309 P.2d 761 (1957). Here, at least one of the notation statements made by the dentist — "Phillipa should have thorough physical" — should not come in under *Young* because it expresses an opinion. Similarly, the observations that "Phillipa feeling unwell. Is on HBP medication, antidepressants" were not made by Dr. Sako, but apparently are statements Mrs. Erickson made to Mr. Erickson, who in turn repeated them to Dr. Sako. They do not qualify as present sense observations because they are not the present sense of Mrs. Erickson, nor even of Mr. Erickson.

One does not normally speak to a dentist for the purpose of making a medical diagnosis or for treatment unless the medical problem involves teeth. Thus, "wants teeth out from implants" might qualify under ER 803(a)(4), but is irrelevant.

The trial court did not abuse its discretion in excluding Dr. Sako's notation.

### JURY INSTRUCTIONS

Mr. Erickson contends that Dr. Kerr had a duty to perform diagnostic procedures and monitor drug use and that the jury should have been provided two additional instructions explaining the law of these duties. Dr. Kerr contends the jury instructions provided allowed plaintiffs to argue their theory of the case.

██ ██ Sufficiency of jury instructions is determined by whether the instructions, read as a whole, correctly state the law, do not mislead the jury, and allow counsel to argue their

---

[12]RCW 5.45.020 provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

theory of the case. *State v. MacMaster*, 113 Wn.2d 226, 233, 778 P.2d 1037 (1989). Use of a proposed instruction is within the discretion of the trial court. *Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 750 P.2d 245 (1988).

Plaintiffs contend that the trial court erred in disallowing proposed instructions regarding a pharmacist's duty, arguing that the jury may have erroneously concluded that it was the pharmacist's error and not Dr. Kerr's to monitor Mrs. Erickson's drug use. They cite *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 782 P.2d 1045 (1989) as requiring this instruction. However, *McKee* does not require any such instruction. *McKee* states that there is no cause of action against a pharmacist for failure to warn the patient or for failure to monitor drug use. The pharmacist's legal duty was not at issue in this case, only Dr. Kerr's legal duty. While it would probably not have been error to utilize the instruction, the jury instructions provided by the trial court allowed the plaintiffs to argue that Dr. Kerr breached his duty by failing to properly monitor Mrs. Erickson's drug use, and there was no error.

Based on the jury instructions given, we find the plaintiffs were able to argue their theory of the case — that Dr. Kerr failed to diagnose Mrs. Erickson's depression — thereby breaching the recognized standard of practice.

CONCLUSION

By introducing Dr. Kerr's medical records, the estate did not waive the deadman's statute. No instruction limiting use of the testimony prohibited under the deadman's statute was given. Upon retrial, evidence of Dr. Kerr's poor memory should not be excluded, while the DeLaurenti testimony should not be allowed because it is hearsay. We do not base our reversal of the estate's cause of action on the DeLaurenti testimony, however, because the estate did not preserve the error for appeal.

In the wrongful death action, while Dr. Kerr properly testified without restriction from the deadman's statute, the trial court's two errors — excluding evidence of Dr. Kerr's

poor memory and allowing DeLaurenti's testimony — were prejudicial and cannot be treated as harmless. We therefore reverse the judgment in its entirety and remand for further proceedings.

Reversed.

PEKELIS, A.C.J., and COLEMAN, J., concur.

After modification, further reconsideration denied September 9, 1993.

Review granted at 123 Wn.2d 1013 (1994).