ESTATE OF Margarette E. ECKSTEIN, by and through its Personal Representative, Patricia K. LUCKEY, Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC., a Tennessee corporation; Life Care Center of Kennewick, Washington Nursing Home; Kennewick Medical Investors, LLC, a Delaware corporation; John Does 1–10 inclusively, jointly and severally liable, Defendants.

No. CV–09–5022–LRS.

United States District Court,
E.D. Washington.

June 3, 2009.

Jeff B. Crollard, Crollard Law Offices PLLC, Seattle, WA, for Plaintiff.

Carin A. Marney, Theodore A. Sheffield, Lane Powell PC, Seattle, WA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

LONNY R. SUKO, District Judge.

BEFORE THE COURT, without oral argument, is Defendants' Motion to Compel Arbitration and Stay Proceedings, Ct. Rec. 9, filed April 20, 2009.

### I. BRIEF FACTUAL BACKGROUND

On or about November 12, 2004, Decedent Margarette Eckstein ("Eckstein") was admitted as a resident of Defendant Life Care Center of Kennewick, Washington ("LLC Kennewick"). Complaint, ¶ 3.1. Gene Kinsey ("Kinsey") served as Eckstein's attorney in fact and legal representative throughout the admission process. Moffat Decl., Exh. A. Kinsey executed a "Voluntary Agreement for Arbitration" dated November 12, 2004 (the "Agreement") on Eckstein's behalf. *Id.*, Exh. B.

Plaintiff brought this action on March 3, 2009, in Benton County Superior Court, asserting claims for (1) neglect of a vulnerable adult; (2) corporate negligence; and (3) wrongful death. Without question, all of these claims are subject to the parties' binding arbitration agreement. Defendants Life Care Centers of America, Inc. and Kennewick Medical Investors, LLC, d/b/a Life Care Center of Kennewick (collectively referred to as "Defendants") then removed this action from state court to federal court based on diversity jurisdiction. Defendants now move this Court for an order compelling arbitration of the above-entitled action and staying the lawsuit pursuant to the Federal Arbitration

Act, 9 U.S.C §§ 1–16, and the Washington Uniform Arbitration Act, RCW 7.04A, et seq.

## II. DISCUSSION

Defendants argue that the Agreement was optional, entered knowingly and voluntarily and should be upheld by the court. All three causes of action, Defendants urge, are unambiguously encompassed by the Agreement. More particularly, these claims "arise out of" and are "related or connected to" Eckstein's "stay and care provided at" LCC Kennewick. All three of these causes of action are premised upon the allegation that Eckstein suffered "personal injury . . . caused by improper or inadequate care." *Id.*

Plaintiff, on the other hand, states that the Agreement should be revoked upon such grounds in law or equity as unconscionability or impossibility. More specifically, Plaintiff responds that the forum selected for the arbitration—the American Arbitration Association—is unavailable. Further, according to Plaintiff, the Agreement is substantively unconscionable because it requires each side to pay their own attorney fees and costs, even though the Plaintiff would be entitled in her claim for neglect to receive attorney fees and costs if she prevails. Moreover, Plaintiff argues, the forum selected and the number of arbitrators (panel of three) is prohibitively expensive.

Finally, Plaintiff asserts that the person who signed the document, Gene Kinsey, did not have authority to waive the rights of statutory beneficiaries in a wrongful death action. Plaintiff asks the Court to deny Defendants' motion to compel arbitration and stay these proceedings.

### A. Unavailability of AAA

■ Plaintiff argues that the Agreement specifies that an arbitration shall be held "before a board of three arbitrators, selected from the American Arbitration Association ("AAA")" and that "the arbitrators shall apply the applicable rules of procedure of the AAA." This document was signed on November 12, 2004 before any dispute arose between the parties. Arbitration before the AAA is not possible because the AAA adopted a Healthcare Policy Statement, effective January 1, 2003, providing that the AAA "will no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate." Crollard Decl., Ex. A. Plaintiff notes the parties have not signed a post-dispute agreement to arbitrate. Crollard Decl., ¶ 4. Finally, Plaintiff relies upon *Magnolia Healthcare v. Barnes,* 994 So.2d 159 (Miss.2008) to argue that the designation of AAA as arbitrator was a material term. Defendants reply that the brevity of the *Barnes* opinion makes it impossible to conclude how significant that forum selection provision was in that Agreement.

Defendants contend that the designation of AAA in the Agreement was not a material term. The fact that AAA no longer hears these types of disputes does not render the Agreement invalid. Another arbitrator may be easily substituted. Defendants state that the provisions of the Federal Arbitration Act (FAA) and Washington Uniform Arbitration Act (WAA) clearly explain that the substitution of arbitrators is permitted, and may be necessary to enforce arbitration. Defendants cite to 9 U.S.C. § 5, which reads:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate

and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Similarly, Defendants argue, RCW 7.04A.110 provides that "if the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court ... shall appoint the arbitrator.".

Defendants further argue that on a contractual level, there is no evidence that the designation of AAA as arbitrator was a material term, specifically negotiated, or relied upon by the parties. *See Owens v. National Health Corp.*, 263 S.W.3d 876, 886 (Tenn.2007) (finding the arbitration agreement enforceable even in the absence of the specified forums because "there is simply no factual basis for plaintiff's assertion that the specification of the two organizations was so material to the contract that it must fail if they are unavailable"). Instead, Defendants note, the Agreement includes a clear severability clause that provides that "[i]n the event that any portion of the Arbitration Agreement is determined to be invalid or unenforceable, the remainder of this Arbitration Agreement will be deemed to continue to be binding." See Exhibit B to Moffat Decl.

Defendants conclude that the Court can simply appoint an alternate forum. Besides, Defendants assert, Plaintiff has presented no evidence or argument why AAA would even be preferable to another arbitration venue. This Court agrees with Defendants in that the unavailability of AAA to hear this case does not render the Agreement unenforceable based on the FAA, the WAA, and the Agreement itself. Plaintiff has not convinced the Court that the designation of AAA as arbitrator was a material term.

### B. *Agreement and Unconscionability*

#### 1. *Cost of Arbitration*

■ Relying on *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash.App. 446, 465–66, 45 P.3d 594 (2002), Plaintiff argues that arbitration that is prohibitively expensive may be voided as unconscionable. Plaintiff Patricia K. Luckey states she has shown by affidavit, as required, how the particular arbitration method selected is prohibitively expensive for her. See Luckey Decl., ¶¶ 3, 4. Alternatively, Plaintiff states, if the Court decides to send this matter to arbitration, Plaintiff Luckey asks the Court to order that it be heard by one arbitrator who is mutually agreeable to both sides.

Defendants argue that Plaintiff's unconscionability argument regarding the cost of arbitration is flawed. Defendants state that while Plaintiff argues that the cost of arbitration would be prohibitively expensive and would preclude Plaintiff from bringing her claims, this argument is entirely speculative at this juncture. Courts have explained that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash.App. 446, 462, 45 P.3d 594 (2002) (*quoting Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

The Court agrees with Defendants in that it appears liability for arbitration fees and costs is entirely speculative at this juncture, an issue reserved for the arbitrators. Plaintiff cannot meet her burden of showing the likelihood of incurring the high costs anticipated by Plaintiff. As

such, Plaintiff's theory is insufficient to establish unconscionability.

### 2. Attorney Fees

Plaintiff asserts, citing *Nelson v. McGoldrick*, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) and RCW 7.04.060(2), that whether a contract is unconscionable is a question of law for the courts. Plaintiff states that the subject arbitration agreement provides that "each party agrees to bear their own attorney fees and costs." Plaintiff points out that under RCW 74.34.200(3), in an action for abuse or neglect of a vulnerable adult, which is defined in RCW 74.34.020(15) to include nursing home residents, a prevailing plaintiff shall be awarded her attorney fees and costs, including expert fees. Plaintiff claims that the arbitration provision in this case tries to silently take away the vulnerable adult's right to receive attorney's fees and cost. Plaintiff concludes this attorney fee and cost provision is substantively unconscionable.

Defendants urge that this argument is a non-issue. Defendants assert that the Agreement does not waive the parties' rights to bring any claims, including claims for attorneys' fees. Plaintiff's assertion that the Agreement "tries to silently take away the vulnerable adult's rights to receive attorney's fees and costs" is simply not true. Defendants further assure that they will not take the position that Plaintiff would be precluded from recovering attorneys' fees, pursuant to the provisions of RCW 74.34.200, should she prevail on that claim in arbitration. Defendants conclude that Plaintiff's argument on this issue fails to provide a valid justification for refusing to enforce the Agreement. The Court agrees with Defendants on this issue.

### C. Is Agreement Binding Upon Statutory Beneficiaries?

 Plaintiff also argues that the Agreement is not binding because the signatory, Gene Kinsey, only had authority to bind his mother, Margarette Eckstein, and not the Plaintiff in this action, her estate, or the statutory beneficiaries of the wrongful death claim. Plaintiff explains that Gene Kinsey's authority under the durable power of attorney did not include the authority to waive the rights of statutory beneficiaries in a wrongful death action, arising out of RCW 4.20.010 and 4.20.020. Plaintiff argues that a wrongful death action is not a cause of action that belongs to the decedent but an action brought on behalf of the statutory beneficiaries, who themselves have been injured by the death, and is akin to a property right for these beneficiaries.

Defendants counter that Plaintiff's argument in this respect ignores the clear language of the Agreement, the Durable Power of Attorney document, and the practicalities of arbitration agreements in the long term care context. More specifically, Defendants contend that to hold otherwise would essentially eviscerate a long term care provider's contractual rights when presented with a wrongful death claim of a resident, the very claim anticipated by the Agreement. Defendants cite to several cases from other jurisdictions other than Washington holding that the estate's wrongful death claim was subject to arbitration. *See Sanford v. Castleton Health Care Center, LLC*, 813 N.E.2d 411, 420 (Ind.Ct.App.2004) (holding the estate's wrongful death claim was subject to arbitration because "regardless of whether [the personal representative], was privy to the contract containing the arbitration clause, the Estate's survival and wrongful death claims arose out of [Defendant's] alleged negligent treatment of [the resident]"); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661, 665 (Ala.2004) (holding that the executor and administratrix of an estate were bound by arbitration provisions when bringing wrongful death actions against a nursing home).

Although there are no Washington cases specifically on point, it appears that other courts have found that an attorney-in-fact can bind a nursing home resident's estate and any other statutory beneficiaries to require arbitration of wrongful death claims. This should be so under the undisputable facts of this case showing that: (1) Gene Kinsey knowingly executed the Agreement on Margarette Eckstein's behalf on November, 12, 2004; (2) at the time of execution, Gene Kinsey served as Margarette Eckstein's attorney-in-fact; (3) Gene Kinsey was not induced by fraud or duress; (4) there is no evidence that Gene Kinsey did not understand any of the terms of the Agreement or their effect; (5) the Plaintiff's claims fall within the Agreement; and (6) the Agreement, on its face, requires Plaintiff's claims to be submitted to binding arbitration.

## III. FEDERAL ARBITRATION ACT AND WASHINGTON ARBITRATION ACT

Defendants assert that well-settled law, the Federal Arbitration Act ("FAA"), and the Washington Uniform Arbitration Act ("WAA") provide that where the parties have entered into a contract that contains an agreement to arbitrate disputes, the agreement will be upheld.

In particular, the FAA provides that written agreements to arbitrate contained in any contract "evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further explicitly states that this Court has authority to enforce such written agreements:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Ti-tle 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

Defendants next point to WAA, and specifically RCW 7.04A.070(1) which states, in relevant part:

On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement, the court shall order the parties to arbitrate if the refusing party does not appear or does not oppose the motion. If the refusing party opposes the motion, the court shall proceed summarily to decide the issue. Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.

■ Defendants conclude that pursuant to the FAA and WAA, this Court must enforce the provisions of the parties' Agreement. No facts have been shown which suggest that the Agreement was entered into without knowledge, or involuntarily under circumstances where consideration has been inadequate. The provisions of the Agreement appear to be plainly written. The signatory of the Agreement, Mr. Kinsey, had authority to bind Eckstein. The Court concludes this Agreement is valid and enforceable.

Having found a valid and enforceable contract, the Court looks to the FAA provision that compels stay of the lawsuit while arbitration proceeds:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

## IV. CONCLUSION

The Court has reviewed the record, the pending motion, and is fully informed. For the foregoing reasons, the parties are compelled to arbitrate pursuant to the Agreement. Meanwhile, the Court stays the proceedings until such arbitration has been had in accordance with the terms of the agreement.

**IT IS ORDERED:**

1. Defendants' Motion to Compel Arbitration and Stay Proceedings, **Ct. Rec. 9,** filed April 20, 2009, is **GRANTED.**

2. Plaintiff and Defendants shall file a joint status report with the Court on or before **December 31, 2009** regarding progress of the arbitration required hereunder. If a joint status report is not practicable, then each party shall file a separate report by the aforementioned date.

3. The Court deems the Agreement provision, designating the AAA to hear the dispute, invalid due to the unavailability of AAA to hear the case. In the absence of agreement by the parties on or before **July 6, 2009** concerning arbitration proce-

dures, and upon motion of either or both parties to the controversy, the Court will consider the appropriateness of appointing a single arbitrator to hear the issues underlying this case and if so determined, the identity of the person so selected.

4. Pursuant to 9 U.S.C. § 3, this case is **STAYED** pending arbitration of all claims that are alleged by the plaintiff, AND until further notice by the Court.

The District Court Executive is directed to file this Order and provide copies to counsel.