231 P.3d 1252 (2010)
155 Wash.App. 919
Clifford Wayne WOODALL, individually and as representative of the Estate of Henry Wayne Woodall; and Sharon G. Woodall King, Respondents,
v.
AVALON CARE CENTER-FEDERAL WAY, LLC, Appellant.
No. 62894-1-I.
Court of Appeals of Washington, Division 1.
May 10, 2010.
*1253 Stephen S. Hornbuckle, The Hornbuckle Firm, Bellevue, WA, for Respondent.
Christopher Holm Howard, Mary Jo Newhouse, Averil Budge Rothrock, Seattle, WA, for Appellant.

PUBLISHED IN PART
¶ COX, J.
¶ 1 Avalon Care CenterFederal Way, LLC ("Avalon"), appeals an order denying in part its motion to compel arbitration of all claims asserted in this survival and wrongful death action. The wrongful death claims are based on statutory causes of action for the benefit of the heirs of Henry Woodall. These heirs did not agree to arbitrate their wrongful death claims. Moreover, there is no basis to require them to arbitrate these claims. We affirm.[1]
¶ 2 On October 6, 2006, Henry Woodall was admitted to a facility run by Avalon that provides skilled nursing care. At the time of his admission, Henry[2] and Avalon executed a "Resident and Facility Arbitration Agreement." The agreement provides for arbitration of all disputes and claims for damages arising from personal injury or medical care.
¶ 3 Henry died on July 28, 2007. Clifford Woodall and Sharon Woodall King are the children of Henry and his sole heirs (collectively, "the heirs"). Clifford is the personal representative of Henry's estate.
¶ 4 Clifford, individually and as the representative of the estate, and Sharon King, individually, brought this action against Avalon under the wrongful death and survival statutes. They seek damages, attorney fees, and other relief.
¶ 5 Avalon moved to compel arbitration and to stay these court proceedings pending the outcome of the arbitration of all claims. The trial court ultimately granted Avalon's motion to compel arbitration in part and denied it in part. The court concluded that the survival claims should be resolved through the contractually agreed arbitration process. But the court also concluded that the arbitration agreement did not apply to the wrongful death claims of the heirs. The trial court expressed its reluctance to split the proceedings to resolve the survival and wrongful death claims, stating that litigation "in two separate forums is inefficient, unfair and exposes [all parties] to the inherent danger of conflicting outcomes based on the same set of intertwined facts." Nevertheless, the court concluded that case and statutory authorities required this result.
¶ 6 Avalon appeals.[3]

ARBITRABILITY OF WRONGFUL DEATH CLAIMS
¶ 7 Avalon argues that the arbitration agreement between Henry and Avalon binds *1254 the heirs to arbitrate their wrongful death claims against Avalon. We disagree.
¶ 8 Whether a person is bound by an agreement to arbitrate is a legal question that is to be determined by the courts.[4] "While a strong public policy favoring arbitration is recognized under both federal and Washington law, `arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[5]
¶ 9 There are limited exceptions to the general rule that one who does not sign an arbitration agreement cannot be compelled to arbitrate.[6] "For instance, a nonsignator is bound by the terms of an arbitration agreement where the nonsignator's claims are asserted solely on behalf of a signator to the arbitration agreement."[7] "In addition, federal courts have held, and the Washington Court of Appeals has recognized, that `[n]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'"[8] Among these principles are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.[9]
¶ 10 Arbitrability is a question of law that we review de novo.[10] The burden of proof of showing that the arbitration agreement is unenforceable is on the party seeking to avoid arbitration.[11]
¶ 11 Here, the arbitration agreement that Henry and Avalon signed states:
RESIDENT AND FACILITY ARBITRATION AGREEMENT

(Not a Condition of Admission Please Read Carefully)
...
... We agree to submit to binding arbitration for all disputes and claims for damages of any kind for injuries and losses arising from the medical care rendered or which should have been rendered after the date of this Agreement. All alleged claims for monetary damages against the facility, its owners, lessees, management organization, or their employees, officers, directors, agents, must be arbitrated including, without limitation, claims for personal injury *1255 from alleged negligence, gross negligence, malpractice, or any alleged claims based on any departure from accepted medical or health care or safety standards, emotional distress or punitive damages.[12]
¶ The agreement further provides:
We expressly intend that this Agreement shall bind all persons whose alleged claims for injuries or losses arise out of care rendered by the Facility or which should have been rendered by Facility after the date of this Agreement, including any spouse, children, or heirs of the Resident or Executor of the Resident's estate.[13]
¶ 12 It is undisputed that Henry and Avalon were the only persons who signed the arbitration agreement. The heirs did not. Thus, the legal question is whether the heirs are required to arbitrate their wrongful death claims against Avalon where they were not parties to the agreement to arbitrate.
¶ 13 We begin our analysis by considering our supreme court's recent observation in Satomi Owners Association v. Satomi, LLC[14] that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'"[15] The court stated this long-standing principle of contract law notwithstanding its acknowledgement that there is a strong public policy favoring arbitration recognized under both federal and state law.[16]
¶ 14 The court went on to identify "certain limited exceptions" to the general rule that a person who is not a party to an arbitration agreement may not be bound by such agreement.[17] It also identified a group of cases where federal courts have held, and this court has recognized, that a person who has not agreed to arbitrate may be bound to arbitrate based on ordinary contract and agency principles.[18] Applying agency principles in one of the consolidated cases in Satomi, the supreme court held a condominium association was bound to arbitrate based on arbitration agreements signed only by its members, where the association asserted claims of its members.[19]
¶ 15 Avalon does not rely on either the Quackenbush v. Allstate Insurance Co.[20] or SouthTrust Bank v. Ford[21] line of cases that Satomi cites as examples of the "certain limited exceptions" to the general rule.[22]Quackenbush was a case where the rights asserted were on behalf of persons who signed arbitration agreements.[23]Ford involved claims on behalf of an estate's claims.[24] These two cases are factually distinguishable from this case. The wrongful death claims here are asserted on behalf of the heirs, neither of whom signed the arbitration agreement between Henry and Avalon.
¶ 16 Avalon relies on Clay v. Permanente Medical Group, Inc.[25]Clay is the third case the Satomi court cited as an example of the limited exceptions to the general rule.
*1256 ¶ 17 That federal case, based on California law, determined that the plaintiffs were bound to an arbitration provision they did not sign because they asserted claims on behalf of the decedent's estate, among other reasons.[26] Here, the heirs assert wrongful death claims, which are not on behalf of Henry's estate, against Avalon under Washington's wrongful death statutes. Clay is distinguishable.
¶ 18 We note also that Clay identifies a split of authority in California Court of Appeals cases over the question of binding persons who are not parties to an arbitration agreement to arbitrate claims:
Plaintiffs correctly identify a split in the California Courts of Appeals regarding the applicability of binding arbitration provisions to non-signatory adult heirs. Two lines of cases may apply. The first follows Rhodes v. California Hospital Medical Center, 76 Cal.App.3d 606, 143 Cal.Rptr. 59 (1978); the second follows Herbert v. Superior Court of Los Angeles County, 169 Cal.App.3d 718, 215 Cal.Rptr. 477 (1985). Though Plaintiffs identify the split, they fail to provide any reason the Court should follow one line of cases over the other in this matter.[27]
¶ 19 Because there is a split of authority within the California Court of Appeals on the question before us, Clay is not helpful in deciding this case. Moreover, the California Supreme Court has not, as of this writing, resolved this conflict within the lower appellate court.[28]
¶ 20 Avalon does not identify any contract or agency principles that would bind the heirs to arbitrate based on the agreement between Avalon and Henry. Likewise, we are unaware of any such principles that would apply to this case.
¶ 21 Avalon also relies on Estate of Eckstein v. Life Care Centers of America, Inc.[29] and Townsend v. Quadrant Corp.[30] In Life Care Centers, the decedent's attorney-in-fact had executed an arbitration agreement on the decedent's behalf upon her admission to defendant Life Care Center.[31] The United States District Court for the Eastern District of Washington granted the defendants' motion to compel arbitration of all claims, including wrongful death claims brought on behalf of statutory beneficiaries.[32] The court recognized that "there are no Washington cases specifically on point" and appears to have relied on a limited search of authorities in other states.[33]
¶ 22 But, as Woodall points out, other out-of-state authority can be read to support the conclusion that wrongful death claims are not subject to a decedent's arbitration agreement. In Lawrence v. Beverly Manor,[34] for example, the Supreme Court of Missouri held that the adult children of a nursing home resident were not bound by the resident's arbitration agreement with the home.[35] The arbitration agreement there purported to bind any claim "`derived through'" the resident's claims.[36] Recognizing that Missouri's wrongful death act creates a new cause of action, that wrongful death "is a cause of *1257 action distinct from any underlying tort claims," and that a wrongful death claim "does not belong to the deceased or even a decedent's estate," the court concluded that the arbitration agreement could not bind the parties in a wrongful death suit.[37]
¶ 23 Similarly, in Peters v. Columbus Steel Castings Co.,[38] the Supreme Court of Ohio held that the wrongful death claim of a wife, who was administrator of her husband's estate, against her husband's employer was not subject to the decedent's arbitration agreement with his employer.[39] The court relied on two "longstanding" principles of law: "(1) only signatories to an arbitration agreement are bound by its terms and (2) a survival action brought to recover for a decedent's own injuries before his or her death is independent from a wrongful-death action seeking damages for the injuries that the decedent's beneficiaries suffer as a result of the death, even though the same nominal party prosecutes both actions."[40] In sum, the decedent's agreement was an agreement "to arbitrate his claims against the company," and thus the provision in the agreement binding the decedent's heirs applied to a survival action.[41] But the decedent could not "restrict his beneficiaries to arbitration of their wrongful-death claims because he held no right to those claims."[42]
¶ 24 Avalon also cites Townsend, a decision from this court.[43] Avalon appears to rely on the portion of that opinion in which we concluded that the two defendant parent corporations, nonsignatories to an arbitration agreement executed by their subsidiary, could enforce the arbitration clause.[44] In so concluding, we recognized the principle that a person not a party to an agreement to arbitrate may be bound to the agreement by ordinary principles of contract and agency.[45]Townsend does not change our analysis here. The issue in this case does not have anything to do with corporate parent/subsidiary relationships. Moreover, the claims here are not "inherently inseparable."[46]
¶ 25 Based on the above analysis, we conclude that Avalon has failed to establish that the heirs are bound to arbitrate their wrongful death claims against Avalon under any of the limited exceptions to the general rule that the Satomi court identified. Moreover, the conflicting authorities in other jurisdictions are not dispositive in deciding the arbitrability question under Washington law.
¶ 26 Avalon relies on another argument to urge that the heirs are bound to arbitrate under an agreement they did not sign. That argument is based on its characterization of the wrongful death claims as "derivative."[47] This is unpersuasive.
¶ 27 Examination of the nature of the claims asserted in this action is helpful in addressing this argument. Survival actions and wrongful death actions, though often brought together, are conceptually distinct.[48] "`The wrongful death statute, RCW 4.20.010, provides that when the death of a person is caused by the wrongful act of another, his personal representative may maintain an action *1258 for damages against the person causing the death.'"[49] The wrongful death statutes "create new causes of action for the benefit of specific surviving relatives to compensate for losses caused to them by the decedent's death."[50] Our supreme court has explained that in this context, the personal representative of the estate "is merely a statutory agent or trustee acting in favor of the class designated in the statute, with no benefits flowing to the estate of the injured deceased."[51] In other words, "`[u]nder no circumstances does the estate of the decedent benefit by the [wrongful death] action. Anything realized therefrom goes to the beneficiaries. A cause of action for wrongful death is not one which ever belonged to the decedent.'"[52]
¶ 28 In contrast, Washington's general survival statute, RCW 4.20.046(1), does not create a separate claim for the decedent's survivors, but merely preserves the causes of action a person could have maintained had he or she not died.[53] Stated differently, the survival statute "allows the decedent's existing causes of action to survive and continue `as an asset of his estate.'"[54] Therefore, unlike the wrongful death statute, the decedent's personal representative may recover damages under RCW 4.20.046(1) on behalf of the decedent's estate.[55]
¶ 29 The trial court correctly applied these principles to this case. The court granted Avalon's motion to compel arbitration to the extent of the survival claims. These claims are an asset of Henry's estate. They originated as Henry's "existing causes of action" which survived his death and "continue[d] `as an asset of his estate.'"[56] Accordingly, Clifford may assert these claims against Avalon as personal representative of Henry's estate.[57] Under the ordinary contract principle of agency, Avalon may properly require those claims to be arbitrated under its agreement with Henry.[58]
¶ 30 In addition, the court correctly denied the motion to the extent of the wrongful death claims asserted by the heirs against Avalon. These claims are exclusively for the benefit of the heirs.[59] The wrongful death statutes "create new causes of action" meant to compensate surviving relatives "for losses caused to them by the decedent's death."[60] No benefits of a wrongful death claim flow to the estate.[61] Nor did the cause of action ever belong to the decedent.[62]
¶ 31 The personal representative of Henry's estate is authorized to commence this action as the nominal party for the survival *1259 action.[63] The personal representative is also the exclusive statutory agent to bring the wrongful death claims on behalf of the heirs.[64] But the scope of the personal representative's authority in this latter capacity does not extend to arbitration of the wrongful death claims.
¶ 32 Avalon claims that the heirs must arbitrate their claims because wrongful death claims are "derivative." The answer to this is simple. In Johnson v. Ottomeier,[65] the supreme court explained, "[T]he action for wrongful death is derivative only in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased."[66] Thus, the wrongful death claims here are derived from the allegedly wrongful acts of Avalon, not from Henry. In short, characterizing the wrongful death claims as "derivative" does not support the proposition that the heirs must arbitrate their claims for wrongful death.
¶ 33 Avalon relies heavily on Ginochio v. Hesston Corp.[67] There, Division Three of this court concluded that the 1981 version of former RCW 4.22.020 required a trial court to reduce the award for a wrongful death claim by the decedent's contributory fault.[68] That was a statutory interpretation case in which the former statute expressly stated that "the contributory fault of the decedent shall be imputed to the claimant in [a wrongful death action]."[69] Avalon contends that the court in Ginochio "held that since wrongful death claims are derivative, the decedent's fault should be imputed to reduce the wrongful death award."[70] While Ginochio discusses the derivative nature of wrongful death claims, its holding primarily relies on the above-quoted language of the statute.[71] It does nothing to alter the supreme court's characterization of the term "derivative" in Johnson. More importantly, it is not helpful in addressing the issue before us: whether the heirs are bound to arbitrate under an agreement they did not sign under the principles articulated in Satomi.
¶ 34 Avalon cites three areas of law unrelated to the question of arbitrability of claims that is before us to support its position: that wrongful death claimants are bound by enforceable liability releases, that this court "treats uniquely wrongful death claims," and that the Industrial Insurance Act bars private claims by heirs and beneficiaries. None of these areas are helpful here.
¶ 35 Neither case Avalon cites on the issue of liability releases addresses the principles discussed in Satomi.[72] Thus, they are not helpful.
¶ 36 The case Avalon cites to show that Washington treats wrongful death claims "uniquely" was decided on a statutory basis not relevant here.[73] Likewise, it does not address the principles stated in Satomi.
*1260 ¶ 37 Finally, the bar on beneficiaries' claims under the Industrial Insurance Act, title 51 RCW, is also entirely statutory.[74] That statutory framework is not helpful in deciding whether the heirs in this case are bound to arbitrate their wrongful death claim.
¶ 38 Avalon makes two policy arguments: first, actions based on the same set of facts should be litigated in the same forum to preserve fairness and judicial efficiency;[75] second, Washington's strong policy favoring arbitration requires that we conclude that the wrongful death claims should be subject to the arbitration agreement just as the survival claims are.[76]
¶ 39 Both policy arguments are addressed by the rules stated in Satomi. The trial court reluctantly concluded that the claims had to be split into two forums. But, as the Satomi court observed, arbitration is a matter of contract.[77] As an important policy of contract, one who has not agreed to arbitrate cannot generally be required to do so.[78] The strong policy favoring arbitration does not overcome the policy that one who is not a party to an agreement to arbitrate cannot generally be required to arbitrate.
¶ 40 The additional cases that Avalon discusses in its reply are also not persuasive of a different result. Both the Michigan Court of Appeals in Ballard v. Southwest Detroit Hospital[79] and the Supreme Court of Texas in In re Labatt Food Service, L.P.[80] relied on the language of their states' wrongful death statutes, which expressly conditioned beneficiaries' claims on the decedent's right to maintain his or her suit for injuries.[81] The Michigan wrongful death act "establishes a cause of action where the defendant's negligence or wrongful act would `if death had not ensued, have entitled the party injured to maintain an action and recover damages.'"[82] The Texas statute had an equivalent provision.[83] Both courts stated that the right to bring an action under these statutes was "derivative" of the decedent's right to have sued for his or own injuries immediately prior to his death.[84]
¶ 41 The Michigan Court of Appeals decided that an appointed PR "is bound by the arbitration agreement to the same extent the decedent would have been bound had she survived."[85] But because that court ultimately held the arbitration agreement unenforceable *1261 for other reasons,[86] its decision could be characterized as dicta.[87] The Supreme Court of Texas held that the beneficiaries were required to arbitrate their wrongful death action because the decedent would have been compelled to arbitrate his claims under his agreement immediately prior to his death.[88]
¶ 42 Unlike the statutes at issue in Ballard and In re Labatt, Washington's wrongful death statutes do not expressly condition a beneficiary's wrongful death claims on the decedent's right to maintain a suit for injuries.[89] In view of that difference, wrongful death claims in Washington are not "derivative" in the same sense as was discussed in those cases.
¶ 43 We conclude that Henry's heirs are not required to arbitrate their wrongful death claims against Avalon. They did not sign the agreement to arbitrate. Moreover, they are not bound to arbitrate by any of the recognized exceptions to the general rule that a nonsignatory to an agreement to arbitrate cannot be required to arbitrate.
¶ 44 We affirm the trial court's order denying the motion to compel arbitration of the wrongful death claims by the heirs against Avalon.
¶ 45 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
WE CONCUR: SCHINDLER and APPELWICK, JJ.
NOTES
[1] Pursuant to RAP 3.4, we direct the parties and the clerks of this court and the superior court to modify the caption on pleadings filed after the filing of this opinion to reflect that the plaintiff is "Clifford Wayne Woodall, as representative of the Estate of Henry Wayne Woodall." This directive is based on our grant of the unopposed motion to dismiss, as plaintiffs, Clifford Wayne Woodall, individually, and Sharon G. Woodall King, individually.
[2] We adopt the parties' use of first names for clarity.
[3] RAP 2.2(a)(3); Stein v. Geonerco, Inc., 105 Wash.App. 41, 43-44, 17 P.3d 1266 (2001); Herzog v. Foster & Marshall, Inc., 56 Wash.App. 437, 445, 783 P.2d 1124 (1989); RCW 7.04A.280(1)(a).
[4] RCW 7.04A.060(2); Satomi Owners Ass'n v. Satomi, LLC, 167 Wash.2d 781, 809, 225 P.3d 213 (2009) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); Townsend v. Quadrant Corp., 153 Wash.App. 870, 881, 224 P.3d 818 (2009).
[5] Satomi, 167 Wash.2d at 810, 225 P.3d 213 (internal citations and quotation marks omitted) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)).
[6] Id.
[7] Id. (citing Quackenbush v. Allstate Ins. Co., 121 F.3d 1372, 1380-82 (9th Cir.1997) (requiring claims of California insurance commissioner, asserted as trustee on behalf of insolvent reinsureds to recover insurance proceeds, to be arbitrated where reinsurance agreements contained arbitration clauses); Clay v. Permanente Med. Group, Inc., 540 F.Supp.2d 1101, 1110 (N.D.Cal.2007) (holding plaintiffs were bound by terms of agreement, including arbitration provisions, entered by decedent, where plaintiffs brought claims on behalf of decedent's estate); SouthTrust Bank v. Ford, 835 So.2d 990, 993-94 (Ala.2002) (holding estate administrator asserting claim on behalf of estate `stands in the [decedent's] shoes' and is bound to arbitrate claim as the signator decedent would have been had he asserted claim himself)).
[8] Satomi, 167 Wash.2d at 811 n. 22, 225 P.3d 213 (alteration in original) (internal quotation marks omitted) (quoting Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir.2006)) (citing Powell v. Sphere Drake Ins. P.L.C., 97 Wash.App. 890, 892, 988 P.2d 12 (1999)).
[9] Id. (quoting Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th Cir.2009)); Powell, 97 Wash.App. at 895-96, 988 P.2d 12 (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995)).
[10] Satomi, 167 Wash.2d at 797, 225 P.3d 213; RCW 7.04A.280(1)(a); Stein, 105 Wash.App. at 45, 17 P.3d 1266.
[11] Satomi, 167 Wash.2d at 797, 225 P.3d 213; Stein, 105 Wash.App. at 48, 17 P.3d 1266.
[12] Clerk's Papers at 32.
[13] Id.
[14] 167 Wash.2d 781, 225 P.3d 213 (2009).
[15] Id. at 810, 225 P.3d 213 (internal quotation marks omitted) (quoting Howsam, 537 U.S. at 83, 123 S.Ct. 588).
[16] See id.
[17] Satomi, 167 Wash.2d at 810-11, 225 P.3d 213.
[18] Id. at 810-11, 811 n. 22, 225 P.3d 213.
[19] Id. at 808-13, 225 P.3d 213.
[20] 121 F.3d 1372 (9th Cir.1997).
[21] 835 So.2d 990 (Ala.2002).
[22] Satomi, 167 Wash.2d at 810, 225 P.3d 213.
[23] Id. (citing Quackenbush, 121 F.3d at 1380-82).
[24] Id. at 810-11, 225 P.3d 213 (citing Ford, 835 So.2d at 993-94).
[25] 540 F.Supp.2d 1101 (N.D.Cal.2007); Opening Brief of Appellant at 17.
[26] Clay, 540 F.Supp.2d at 1110 ("Because Mr. Clay agreed to the terms of the [coverage contract including an arbitration provision], his estate is bound by its terms. Therefore, the various causes of action in the Complaint which are brought on behalf of the estate must be submitted to arbitration."); Satomi, 167 Wash.2d at 810, 225 P.3d 213 (citing Clay, 540 F.Supp.2d at 1110).
[27] Clay, 540 F.Supp.2d at 1111.
[28] Ruiz v. Podolsky, 175 Cal.App.4th 227, 95 Cal.Rptr.3d 828 (2009), review granted and opinion superseded by 218 P.3d 261, 101 Cal.Rptr.3d 1 (2009).
[29] 623 F.Supp.2d 1235 (E.D.Wash.2009).
[30] 153 Wash.App. 870, 224 P.3d 818 (2009).
[31] Life Care, 623 F.Supp.2d at 1236.
[32] Id. at 1239-41.
[33] Id. at 1239-40
[34] 273 S.W.3d 525 (Mo.2009).
[35] Id. at 530.
[36] Id. at 526.
[37] Id. at 527-28.
[38] 115 Ohio St.3d 134, 873 N.E.2d 1258 (2007).
[39] Id. at 135, 138-39, 873 N.E.2d 1258.
[40] Id. at 136, 873 N.E.2d 1258.
[41] Id. at 138, 873 N.E.2d 1258.
[42] Id.
[43] 153 Wash.App. 870, 224 P.3d 818.
[44] Appellant's Statement of Additional Authorities at 1 (quoting Townsend, 153 Wash.App. at 889, 224 P.3d 818).
[45] Townsend, 153 Wash.App. at 889, 224 P.3d 818.
[46] See id.
[47] Opening Brief of Appellant at 8-12.
[48] Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wash.App. 119, 126, 4 P.3d 844 (2000).
[49] Tait v. Wahl, 97 Wash.App. 765, 768-69, 987 P.2d 127 (1999) (quoting Long v. Dugan, 57 Wash.App. 309, 311, 788 P.2d 1 (1990)).
[50] Federated Servs., 101 Wash.App. at 126, 4 P.3d 844 (citing RCW 4.20.010, 4.24.010; Gray v. Goodson, 61 Wash.2d 319, 325, 378 P.2d 413 (1963)).
[51] Gray, 61 Wash.2d at 327, 378 P.2d 413.
[52] Id. (quoting Maciejczak v. Bartell, 187 Wash. 113, 60 P.2d 31 (1936)).
[53] Tait, 97 Wash.App. at 772, 987 P.2d 127 (quoting Cavazos v. Franklin, 73 Wash.App. 116, 119, 867 P.2d 674 (1994)).
[54] Federated Servs. Ins., 101 Wash.App. at 126, 4 P.3d 844 (quoting Warner v. McCaughan, 77 Wash.2d 178, 179, 460 P.2d 272 (1969)).
[55] Tait, 97 Wash.App. at 772, 987 P.2d 127.
[56] Federated Servs., 101 Wash.App. at 126, 4 P.3d 844 (quoting Warner, 77 Wash.2d at 179, 460 P.2d 272).
[57] See Tait, 97 Wash.App. at 772, 987 P.2d 127.
[58] See Satomi, 167 Wash.2d at 811 n. 22, 808-13, 225 P.3d 213 (condominium association was bound to arbitrate based on arbitration agreements signed only by its members, whose claims the association asserted).
[59] Id.
[60] Federated Servs. Ins., 101 Wash.App. at 126, 4 P.3d 844 (emphasis added) (citing Gray, 61 Wash.2d at 325, 378 P.2d 413).
[61] Gray, 61 Wash.2d at 327, 378 P.2d 413.
[62] Id. (quoting Maciejczak, 187 Wash. 113, 60 P.2d 31).
[63] RCW 4.20.046.
[64] RCW 4.20.010, .020.
[65] 45 Wash.2d 419, 275 P.2d 723 (1954).
[66] Johnson v. Ottomeier, 45 Wash.2d 419, 423, 275 P.2d 723 (1954) (emphasis added).
[67] 46 Wash.App. 843, 733 P.2d 551 (1987).
[68] Id. at 847-48, 733 P.2d 551.
[69] Id. at 844, 733 P.2d 551 (boldface added).
[70] Opening Brief of Appellant at 12.
[71] See Ginochio, 46 Wash.App. at 845-48, 733 P.2d 551 (discussing the legislature's reasons for treating wrongful death claims differently than other independent causes of action in enacting a statute that imputed contributory fault to wrongful death claims).
[72] See Hewitt v. Miller, 11 Wash.App. 72, 521 P.2d 244 (1974) (wrongful death action barred because release of liability signed by student at scuba diving class was not contrary to public policy); Boyce v. West, 71 Wash.App. 657, 862 P.2d 592 (1993) (wrongful death action barred because release of liability signed by student at scuba diving class covered the instructor as an employee, the release did not violate public policy, and plaintiff presented insufficient evidence to defeat summary judgment that instructor was grossly negligent).
[73] Atchison v. Great Western Malting Co., 161 Wash.2d 372, 166 P.3d 662 (2007) (holding that the minority of a wrongful death beneficiary does not toll the statute of limitations for wrongful death claims because the statutory scheme grants the PR, not the beneficiary, the right to sue).
[74] See RCW 51.04.010 ("sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title" (emphasis added)).
[75] Opening Brief of Appellant at 12-13 (citing State v. Dent, 123 Wash.2d 467, 484, 869 P.2d 392 (1994) (discussing trial court's decision to deny severance where two defendants were convicted at joint trial)).
[76] Id. at 14 (citing Munsey v. Walla Walla College, 80 Wash.App. 92, 94-95, 906 P.2d 988 (1995)).
[77] Satomi, 167 Wash.2d at 810, 225 P.3d 213 (quoting Howsam, 537 U.S. at 83, 123 S.Ct. 588).
[78] See id.
[79] 119 Mich.App. 814, 327 N.W.2d 370 (1982).
[80] 279 S.W.3d 640 (Tex.2009).
[81] See Ballard, 119 Mich.App. at 817-18, 327 N.W.2d 370; In re Labatt, 279 S.W.3d at 644.
[82] Ballard, 119 Mich.App. at 817-18, 327 N.W.2d 370 (quoting Mich. Comp. Laws § 600.2922(1)).
[83] In re Labatt, 279 S.W.3d at 644 (Wrongful death beneficiaries may pursue a cause of action "`only if the individual injured would have been entitled to bring an action for the injury if the individual had lived.'" (quoting Tex. Civ. Prac. & Rem.Code § 71.003(a))).
[84] Id. (characterizing the claim as "entirely derivative"); Ballard, 119 Mich.App. at 818, 327 N.W.2d 370 (wrongful death cause of action "expressly made derivative of the decedent's rights").
[85] Ballard, 119 Mich.App. at 818-19, 327 N.W.2d 370.
[86] Id. at 819, 327 N.W.2d 370.
[87] See Pedersen v. Klinkert, 56 Wash.2d 313, 317, 352 P.2d 1025 (1960) (dicta is language not necessary to the decision in a particular case).
[88] In re Labatt, 279 S.W.3d at 649.
[89] RCW 4.20.010, .020.